1

2

3

4

5

6

7

8          **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  LANCE RICHARD RHOADES,              No. 2:14-CV-1229-CMK

12              Plaintiff,

13       vs.                          <u>MEMORANDUM OPINION AND ORDER</u>

14  COMMISSIONER OF SOCIAL
    SECURITY,
15
                Defendant.
16
    _____/
17

18          Plaintiff, who is proceeding with retained counsel, brings this action under

19  42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security.

20  Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

21  judge for all purposes, including entry of final judgment.  <u>See</u> 28 U.S.C. § 636(c).  Pending

22  before the court are plaintiff's motion for summary judgment (Doc. 13) and defendant's cross-

23  motion for summary judgment (Doc. 15).

24  / / /

25  / / /

26  / / /

1

## I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits on January 6, 2011, and May 16, 2011.  In the applications, plaintiff claims that disability began on June 9, 2008.  Plaintiff's claims were initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on February 28, 2013, before Administrative Law Judge ("ALJ") Mark C. Ramsey.   In a April 15, 2013, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

> 1.    The claimant has the following severe impairment(s): bilateral shoulder injuries status post three surgeries right shoulder, and obesity.
>
> 2.    The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations.
>
> 3.    The claimant has the following residual functional capacity: the claimant can perform light work except he is precluded from lifting, pushing, and pulling of heavy objects with the bilateral upper extremities, and repetitive work at or above shoulder level.
>
> 4.    Considering the claimant's age, education, work experience, residual functional capacity, and the Medical-Vocational Guidelines, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on April 28, 2014, this appeal followed.


## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

1   v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

2   decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

3   Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

4   findings, or if there is conflicting evidence supporting a particular finding, the finding of the

5   Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

6   Therefore, where the evidence is susceptible to more than one rational interpretation, one of

7   which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

8   Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

9   standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

10  Cir. 1988).

11

12                              **III.  DISCUSSION**

13          In his motion for summary judgment, plaintiff argues: (1) the ALJ failed to

14  address all of Dr. Watkin's opinions; (2) the ALJ failed to address the opinions of Drs. Acinas

15  and Kalen; (3) the ALJ failed to provide sufficient reasons supporting an adverse credibility

16  finding; and (4) the ALJ erred in applying the Medical-Vocational Guidelines.

17          **A.    Evaluation of Medical Opinions**

18          The weight given to medical opinions depends in part on whether they are

19  proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

20  821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

21  professional, who has a greater opportunity to know and observe the patient as an individual,

22  than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285

23  (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given

24  to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4

25  (9th Cir. 1990).

26  / / /

1    In addition to considering its source, to evaluate whether the Commissioner

2  properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are

3  in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

4  uncontradicted opinion of a treating or examining medical professional only for "clear and

5  convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

6  While a treating professional's opinion generally is accorded superior weight, if it is contradicted

7  by an examining professional's opinion which is supported by different independent clinical

8  findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

9  1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

10  rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

11  81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

12  the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

13  finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

14  legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

15  professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

16  without other evidence, is insufficient to reject the opinion of a treating or examining

17  professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

18  conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

19  1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

20  see also Magallanes, 881 F.2d at 751.

21    1.    Dr. Watkin

22    As to Dr. Watkins, the ALJ stated:

23    In March 2010, Dr. Watkin opines that with respect to the claimant's right
          upper extremity, he is precluded from lifting, pushing, and pulling of
24    heavy objects and repetitive work at or above shoulder level. . . .

25    . . .The undersigned . . . gives great weight to Dr. Watkin who opines that
          with respect to the claimant's right upper extremity, he is precluded from
26    lifting, pushing, and pulling of heavy objects and repetitive work at or

4

1     above shoulder level.  Dr. Watkin's findings and conclusions support a
limitation to at least light work with no lifting, pushing, and pulling of
2     heavy objects and repetitive work at or above shoulder level. . . .

3 Plaintiff argues:

4     . . .[P]laintiff contends that the ALJ erred to the extent of failing to
make findings without explanation of Dr. Watkin's specific clinical
5     examination findings of signs that Range of Motion of the Shoulder
revealed active flexion on the right was 45 degrees, and active external
6     rotation on the right was 50 degrees, and active internal rotation was 45
degrees on the right, and active extension was 45 degrees on the right, and
7     active abduction was 45 degrees on the right, and active adduction was 20
degrees on the right (Tr. 488), and JAMAR grip dynamometer reading
8     revealed plaintiff had 28/15/30 on the right compared to 50/45/45 on the
left (Tr. 489). . . . Plaintiff contends that the ALJ should be found to have
9     erred by failing to set forth clear and convincing reasons for disregarding
and rejecting the uncontradicted full findings of his functional limitations
10     by Dr. Watkin. . . .

11     Plaintiff's somewhat convoluted argument fails to identify any opinion offered by

12 Dr. Watkin that was not addressed in the ALJ's decision.  A careful review of Dr. Watkin's

13 March 2010 report indicates that the doctor offered the following opinion as to plaintiff's

14 functional limitations: "Mr. Rhoades is precluded from lifting, pushing, and pulling of heavy

15 objects and repetitive work at or above shoulder level."  The doctor offered no other opinions

16 regarding plaintiff's functional capacity based on the objective findings noted in the report.  It is

17 for the doctor – not the ALJ – to translate clinical objective findings into an opinion as to

18 functional capacity.  The ALJ's duty is adequately discharged where an assessment as to the

19 weight given such opinion is made, as was the case here.

20     2.   <u>Drs. Acinas and Kalen</u>

21     Plaintiff argues: "[T]he ALJ should be found to have erred by failing to include

22 the State Agency non-examining physicians' 5-19-11 and 10-18-11 additional finding that

23 plaintiff was limited to 'occ(asional) front and lat(eral)' reaching in the residual functional

24 capacity assessment without explanation (Tr. 100, 123). . . ."  Plaintiff references Exhibits 2A

25 and 6A.  In Exhibit 2A, agency reviewing doctor M. Acinas, M.D., cited decreased range of

26 motion and opined that plaintiff could do no overhead reaching on the right and was limited to

1    only occasional front and lateral reaching on the right.  In Exhibit 6A, agency reviewing doctor

2    Vicki Kalen, M.D., rendered the same opinion.

3                    The ALJ made only passing reference to these opinions as follows:

4                    As for the opinion evidence, the undersigned gives great weight to the
                     conclusions and findings of the State agency physician[s] that the claimant

5                    can perform light work except with the right upper extremity, precluded
                     from lifting, pushing, and pulling of heavy objects and repetitive work at

6                    or above shoulder level. . . . (Ex. 2A, 6A. . .).

7    While the ALJ states that "great weight" was given to the opinions of Drs. Acinas and Kalen, the

8    ALJ does not accurately describe their opinions.  Specifically, the ALJ's residual functional

9    capacity assessment precluded lifting, pushing, and pulling of heavy objects and repetitive work

10   at or above shoulder level, but does not address the doctors' restriction to no overhead reaching.

11                   Defendant acknowledges that the ALJ rejected specific limitations on front or

12   lateral reaching, but argues that the ALJ's residual functional capacity finding nonetheless

13   accounts for limitations in this regard.  Defendant points to the ALJ's preclusion of repetitive

14   work at or above shoulder level as indicating the ALJ's acceptance of the doctors' reaching

15   limitations.  The court agrees that "at or above shoulder level" indeed incorporates overhead as

16   well as front and lateral reaching.  It is also reasonable to include a limitation to only occasional

17   front and lateral reaching in the ALJ's assessment that plaintiff cannot perform "repetitive work"

18   at or above shoulder level.  Drs. Acinas and Kalen, however, opined that plaintiff is capable of <u>no</u>

19   overhead reaching whereas the ALJ found that plaintiff's overhead reaching limitation applied

20   only to repetitive work.  In other words, the ALJ allows for occasional overhead reaching but the

21   doctors do not.  The ALJ erred by failing to explain this discrepancy.

22         **B.      Plaintiff's Credibility**

23                   The Commissioner determines whether a disability applicant is credible, and the

24   court defers to the Commissioner's discretion if the Commissioner used the proper process and

25   provided proper reasons.  <u>See Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit

26   credibility finding must be supported by specific, cogent reasons.  <u>See Rashad v. Sullivan</u>, 903

F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d

1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007),

and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

        If there is objective medical evidence of an underlying impairment, the

Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the
> [symptom] itself, or the severity thereof.  Nor must the claimant produce
> objective medical evidence of the causal relationship between the
> medically determinable impairment and the symptom.  By requiring that
> the medical impairment "could reasonably be expected to produce" pain or
> another symptom, the Cotton test requires only that the causal relationship
> be a reasonable inference, not a medically proven phenomenon.

> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
> Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

        The Commissioner may, however, consider the nature of the symptoms alleged,

including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

physician and third-party testimony about the nature, severity, and effect of symptoms.  See

Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

claimant cooperated during physical examinations or provided conflicting statements concerning

1   drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

2   claimant testifies as to symptoms greater than would normally be produced by a given

3   impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

4   Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

5           Regarding reliance on a claimant's daily activities to find testimony of disabling

6   pain not credible, the Social Security Act does not require that disability claimants be utterly

7   incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has

8   repeatedly held that the   ". . . mere fact that a plaintiff has carried out certain daily activities . . .

9   does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v.

10  Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th

11  Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a

12  claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic

13  restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the

14  claimant was entitled to benefits based on constant leg and back pain despite the claimant's

15  ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home

16  activities are not easily transferable to what may be the more grueling environment of the

17  workplace, where it might be impossible to periodically rest or take medication").   Daily

18  activities must be such that they show that the claimant is ". . .able to spend a substantial part of

19  his day engaged in pursuits involving the performance of physical functions that are transferable

20  to a work setting."  Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard

21  before relying on daily activities to find a claimant's pain testimony not credible.  See Burch v.

22  Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

23           The ALJ stated as follows regarding plaintiff's statements and credibility:

24       The claimant. . . alleges he is unable to work due to a torn right rotator
         cuff with three surgeries on his shoulder.  However, when the claimant
25       filed his application, the Social Security District office employee noted
         that the claimant states he can only raise his arm shoulder height.
26       However, his hands are greasy as if he was doing car repair.  The claimant

states he has problems reaching, lifting, and using his hands.  He states he can walk 1/2 mil, lift about 10-15 pounds, cannot reach at all with his right arm, and his right hand is numb.  He requires no assistive device.  In June 2011, he states his left shoulder pain is worse; he is stiff and unable to use his right arm in any significant manner as all use causes severe right shoulder pain.  He can stand about five to ten minutes and then sit for 10 to 15 minutes and then needs to sit or walk about.  He estimates he can walk about 100 feet slowly.  In April 2012, he reports more severe shoulder pain.  He also has neck pain down to his elbow.  He reports weight gain and that he does not use his right arm.  He also states he has had balance problems since December 2011 (Ex. 1E, 2E, 4E, 6E, 8E).

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

In terms of the claimant's alleged right shoulder injury, he states his arm was fine until mid-2008.  He was working on a logging site on a steep hill using heavy equipment and the vehicle rolled.  Redding Rancheria records and Dr. Reinhardt indicate right shoulder massive rotator cuff tendon tear with retraction, biceps tendon instability, probable labral internal derangement, and axillary nerve injury.  Dr. Reinhardt notes biceps tendon instability associated with subscapular full thickness tear, labral internal derangement, and axillary nerve damage.  The claimant had an operation on his right shoulder in July 2008.  Based on the MRI and EMG findings in November 2008, the claimant had additional surgery in December 2008, to do a revision repair.  In April 2009, the claimant's shoulder MRI shows a re-tear with retraction of supraspinatus tendon to AC joint.  In June 2009, his doctor was able to repair the rotator cuff and release the subacromial adhesions.  There was no evidence of malignant neoplastic process, crystal deposit, or significant acute inflammatory elements.  The claimant was to remain off work for six weeks.  January 2010 records indicate stabilization of his scapula.  However, he has a permanent impairment with respect to motion and strength and cannot return to operation of heavy equipment.  Redding Rancheria records for 2010 continue to note some right shoulder pain with decreased range of motion secondary to pain (Ex. 1F-4F, 12F-16F).

The ALJ then commented on Dr. Watkin's report, discussed above, and continued as follows:

. . .Treatment in 2010 and 2011 consists of medication to control pain and range of motion exercises.  There is no indication of significant side effects from medication (Ex. 17F).

There is little additional treatment until February 2012 when the claimant complains of pain in his left shoulder that he initially states is due to overuse since he has trouble with his right shoulder but later states he fell

and hurt his left shoulder about six weeks previously.  It is not until February 2012 that the claimant fell and injured his left shoulder.  The claimant gives conflicting statements about the injury.  He first states the pain is due to overuse and later alleged that he fell and hurt his shoulder.  X-ray of his left shoulder in February 2012 shows no significant abnormality.  March 2012 records indicate probable adhesive capsulitis.  However, Dr. Verhoog notes improvement in range of motion with forward flexion and increased abduction and external rotation.  He has very restricted motion in his right shoulder from three previous surgeries consistent with probable adhesive capsulitis.  With one month of physical therapy, the claimant has significant improvement in full passive range of motion.  In May 2012, Dr. Verhoog notes improved forward active flexion of about 150 degrees and passively he goes to about 160 degrees.  X-rays of the shoulder are normal but a MRI scan indicates a supraspinatus tendon tear.  Dr. Verhoog suspects he will do very well from surgery based on the MRI findings of his left shoulder.  In May 2012, the claimant underwent uncomplicated left shoulder rotator cuff repair and left shoulder anterior acromioplasty.  Treatment in 2012 consists of medication to control pain and range of motion exercises.  He has mild crepitus and some reduced range of motion.  In November 2012, he reports moderate pain in his shoulder but there are no significant findings other than bilateral shoulder decreased range of motion.  Treatment consists of pain medication and there is no indication of significant side effects from medication (Ex. 18F-23F).

* * *

In making this assessment, the undersigned considers the claimant's testimony of pain and inability to engage in work activity and finds that the claimant's testimony is not fully credible.  The claimant testifies that he does nothing around the house and does not drive.  However, that is inconsistent with earlier statements that he goes to the post office, visits with friends both at his home and their homes, does not need special reminders to take care of his personal needs, does light duty household repairs, drives a car, shops in stores, and goes to movies with friends (Ex. 4E).  Such activities do not indicate a disabling impairment of the claimant's residual functional capacity for light work activity, as described above.  Of note, the Social Security employee also observed his hands were greasy and suggestive that he does work with his hands.  He has restricted shoulder range of motion but no significant atrophy, neurological deficits, radicular pain, weakness, reflex absence, or decreased sensation.  The claimant has not participated in the treatment normally associated with a severe pain syndrome.  He takes medication but alleges no significant side effects.  He betrays no evidence of more than mild pain or discomfort while testifying at the hearing.  The hearing was short-lived and it cannot be considered a conclusive indicator of the claimant's overall level of pain on a day-to-day basis, but the apparent lack of discomfort during the hearing is given some slight weight in reaching the conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity.  Finally, the type, dosage, and side effects of medication employed to treat his impairment(s) would not

preclude him from performing work at a less than full range of light
exertion.  Based on the foregoing, the undersigned concludes his
allegations of limitations are unsupported by the evidence (Ex. 4E).

Plaintiff argues:

. . .[P]laintiff contends that the ALJ erred by failing to consider all
of the extensive clinical findings of abnormality of his right shoulder, arm,
and hand in the medical records, particularly in regards to Dr. Watkin's 3-
5-10 findings of clinical signs that some of the muscles in plaintiffs' right
arm continued to be "significantly weak," and there was evidence of
". . .detachment of the deltoid at the acromion with atrophy. . .(and) there
was wasting at the attachment of the deltoid," and range of motion of the
right shoulder revealed limitations of active flexion to 45 degrees, external
rotation to 50 degrees, active internal rotation to 45 degrees, active
extension to 45 degrees, active abduction to 45 degrees, and active
adduction to 20 degrees (Tr. 488), and circumferential measurement of his
bicep revealed the right was 34 cm while the left was 35 cm, and JAMAR
dynamometer grip test revealed 28/25/30 on the right compared to
50/45/45 on the left (Tr. 24-26, 489). . . .
        Plaintiff contends regarding his ability to occasionally take care of
his personal needs and perform some household chores and attend to his
daughter that those limited activities should be found not to constitute
substantial evidence to discredit his testimony because the ALJ should be
found to have erred by failing to make findings regarding whether these
activities provided him with transferable skills and whether these activities
occupied a substantial part of the day. . . . Plaintiff contends that gaps in
treatment for his alleged musculoskeletal impairments noted by the ALJ
(Tr. 26) should not have been used to discredit his testimony because
plaintiff testified that he had settled his Worker's Compensation claim for
a small amount of cash without continuing medical care benefits (Tr. 41),
and the records show that thereafter he had to rely on a family health
care clinic that offered nothing more than medication (Tr. 342-371, 608-
610). . . .
        Plaintiff contends that the ALJ should be found to have erred by
failing to make a specific credibility finding in regards to his allegations of
having numbness and problems using his hands (Tr. 124) because
Electromyogram testing revealed he had neurological abnormality on the
right (Tr. 452), and JAMAR dynamometer testing revealed he had
significantly reduced grim strength on the right (Tr. 489). . . .

        The ALJ cited a number of reasons for rejecting plaintiff's statements as not

credible, and any one of them, if supported by substantial evidence, is sufficient to support the

ALJ's credibility finding.  In particular, the ALJ observed that plaintiff made inconsistent

statements regarding his daily activities.  At the February 28, 2013, hearing, plaintiff testified that

he does not change the sheets on his bed, does not vacuum, does not mop the floor, does not

1    scrub his bathroom tub and shower, does not cook at all, does not shop for groceries, does not

2    mow the lawn, does not rake leaves, does not cut wood, does not go to church, does not go to the

3    movies, does not go fishing, does not go camping, does not play any sports, does not do any work

4    on his truck, does not shop for clothes, does not talk on the phone, and has no hobbies.  In a

5    Function Report, however, plaintiff stated that he does the following: performs light duty

6    household repairs; drives a car; shops in stores for clothes and music; and regularly goes to the

7    movies with friends.  These inconsistent statements – which plaintiff does not address in his

8    motion for summary judgment – constitute substantial evidence supporting the ALJ's adverse

9    credibility finding.

10        **C.**    <u>**Application of Medical-Vocational Guidelines**</u>

11           The Medical-Vocational Guidelines ("Grids") provide a uniform conclusion about

12    disability for various combinations of age, education, previous work experience, and residual

13    functional capacity.  The Grids allow the Commissioner to streamline the administrative process

14    and encourage uniform treatment of claims based on the number of jobs in the national economy

15    for any given category of residual functioning capacity.  <u>See</u> <u>Heckler v. Campbell</u>, 461 U.S. 458,

16    460-62 (1983) (discussing creation and purpose of the Grids).

17           The Commissioner may apply the Grids in lieu of taking the testimony of a

18    vocational expert only when the Grids accurately and completely describe the claimant's abilities

19    and limitations.  <u>See</u> <u>Jones v. Heckler</u>, 760 F.2d 993, 998 (9th Cir. 1985); <u>see also</u> <u>Heckler v.</u>

20    <u>Campbell</u>, 461 U.S. 458, 462 n.5 (1983).  Thus, the Commissioner generally may not rely on the

21    Grids if a claimant suffers from non-exertional limitations because the Grids are based on

22    exertional strength factors only.  <u>See</u> 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b).

23    "If a claimant has an impairment that limits his or her ability to work without directly affecting

24    his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered

25    by the Grids."  <u>Penny v. Sullivan</u>, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404,

26    Subpart P, Appendix 2, § 200.00(d), (e)).  The Commissioner may, however, rely on the Grids

1   even when a claimant has combined exertional and non-exertional limitations, if non-exertional

2   limitations do not impact the claimant's exertional capabilities.  See Bates v. Sullivan, 894 F.2d

3   1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

4                    In cases where the Grids are not fully applicable, the ALJ may meet his burden

5   under step five of the sequential analysis by propounding to a vocational expert hypothetical

6   questions based on medical assumptions, supported by substantial evidence, that reflect all the

7   plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically,

8   where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the

9   ALJ is required to obtain vocational expert testimony.  See Burkhart v. Bowen, 587 F.2d 1335,

10  1341 (9th Cir. 1988).

11                   In applying the Grids to this case, the ALJ stated:

12           If the claimant had the residual functional capacity to perform the full
             range of light work, considering the claimant's age, education, and work
13           experience, a finding of "not disabled" would be directed by Medical-
             Vocational Rule 202.21.  However, the additional limitations have little or
14           no effect on the occupational base of unskilled light work.  A finding of
             "not disabled" is therefore appropriate under the framework of this rule as
15           most light jobs do not require lifting, pushing, and pulling of heavy objects
             and repetitive work at or above shoulder level.
16

17  The ALJ in found that the Grids could be applied because most light jobs do not require

18  repetitive work above shoulder level and plaintiff is only precluded from repetitive reaching

19  work.  As discussed above, however, the ALJ failed to take into account the two state agency

20  doctors' opinion that plaintiff cannot perform any overhead reaching.  Given that the ALJ did not

21  provide any reasons for rejecting the state agency doctors' overhead reaching limitation, the court

22  cannot say that the ALJ properly applied the Grids in this case.  It is possible that, taking a

23  limitation to no overhead reaching into account, vocational testimony would be required.

24  ///

25  ///

26  ///

**IV.  CONCLUSION**

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (Doc. 13) is granted;

2.  Defendant's cross motion for summary judgment (Doc. 15) is denied;

3.  This matter is remanded for further proceedings consistent with this order; and

4.  The Clerk of the Court is directed to enter judgment and close this file.

DATED:   October 21, 2015

_Craig M. Kellison_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

14